Filed 10/23/24  In re Samantha V. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re SAMANTHA V. et al., Persons Coming Under the Juvenile Court Law. | B328568 (Los Angeles County Super. Ct. No. 22CCJP02643) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> LUIS V., <br><br> Defendant and Appellant; <br><br> LILIAN O., <br><br> Defendant and Respondent. | |

APPEAL from orders of the Superior Court of Los Angeles County, Lucia J. Murillo, Judge Pro Tempore.  Affirmed.

David M. Yorton, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Sarah Vesecky, Deputy County Counsel, for Plaintiff and Respondent.

Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Respondent.

_____

Appellant Luis V. (father) and respondent Lilian O. (mother) have three children:  Samantha V. (born in 2011), Rocio V. (born in 2016), and Santiago O. (born in 2017).  The juvenile court assumed dependency jurisdiction over the three children because mother and father have a history of engaging in violent altercations in the presence of the children, father has a history of substance abuse, and mother failed to protect the children from father.  The court later granted mother's request for a restraining order against father that included the children as protected parties and terminated jurisdiction with a juvenile custody order that awarded joint legal custody of the children to both parents, sole physical custody to mother, and monitored visitation to father.

On appeal, father contests the evidentiary sufficiency of the portion of the restraining order naming his children as protected persons and the order restricting him to only monitored visits with the children.  We reject his challenge to the restraining order because there is substantial evidence that father exposed his children to the risk of physical harm from his acts of domestic violence against mother in their presence.  Father's claim of error regarding the monitored visitation order fails because the

2

transcript of the restraining order hearing belies father's assertion the juvenile court believed it lacked authority to consider his request to have unmonitored visits. Rather, the court merely found visitation had been determined at a prior review hearing, and that the only matter before it was mother's request for a restraining order. Lastly, father has not shown the juvenile court erred in declining to reconsider its prior decision to grant him only monitored visitation with the children. We thus affirm.

## PROCEDURAL BACKGROUND[1]

We summarize only those aspects of the procedural history pertinent to our disposition of this appeal. We address facts relevant to father's appellate claims in Discussion, parts A–B, *post*.

On July 8, 2022, the Los Angeles County Department of Children and Family Services (DCFS or the agency) filed a dependency petition pursuant to Welfare and Institutions Code[2]

---

[1] In describing the underlying dependency proceedings, we rely in part on admissions made by the parties in their appellate briefing and on assertions made by respondents that father does not contest in his reply. (See *Artal v. Allen* (2003) 111 Cal.App.4th 273, 275, fn. 2 [" '[A] reviewing court may make use of statements [in briefs and argument] . . . as admissions against the party [advancing them].' "]; *Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2023) 94 Cal.App.5th 764, 773–774 [concluding that the appellants "tacitly concede[d]" a point raised in the respondents' brief by "failing to dispute it in their reply"].)

[2] Undesignated statutory references are to the Welfare and Institutions Code.

section 300.  The agency alleged dependency jurisdiction over Samantha, Rocio, and Santiago was proper because mother and father had a history of engaging in violent altercations and father had a history of substance abuse.  At the initial hearing held on July 22, 2022, the juvenile court detained the children from father, released them to mother, and authorized father to have monitored visits.

On August 26, 2022, the juvenile court held a combined jurisdiction/disposition hearing.  Father pleaded no contest to an amended version of the dependency petition that averred the following:  "The children Samantha V[.], Rocio V[.], and Santiago [O.]'s mother . . . and father . . . have a history of engaging in violent altercations.  On 04/18/2021, . . . father chased . . . mother with a rake, in the presence of the children Rocio and Santiago.  On a prior occasion in 2021, . . . father slapped . . . mother's face.  Father has a history of substance abuse, including alcohol, and is a recent user of amphetamine, methamphetamine, and alcohol, which renders . . . father incapable of providing regular care of the children. . . .  [M]other failed to protect the children by allowing . . . father to reside in the children's home and to have unlimited access to the children.  Such violent conduct on the part of . . . mother and . . . father, substance use by . . . father, and . . . mother's failure to protect the children create a detrimental home environment, and place the children at risk of serious physical harm, damage, [and] danger."

The juvenile court sustained the amended petition, declared the children dependents of the court, removed them from father's custody, maintained them in mother's custody, ordered the parents to participate in services, and granted father

4

monitored visitation with the children but gave DCFS discretion to liberalize father's visits.

In October 2022, DCFS permitted father to have unmonitored visitation with the children.

The juvenile court scheduled a section 364 review hearing for February 24, 2023.[3]  On that date, mother filed a request for a restraining order against father.  At the February 24, 2023 hearing, the juvenile court granted mother a temporary restraining order with an expiration date of March 17, 2023, scheduled the permanent restraining order hearing for March 17, 2023, and continued the section 364 review hearing to February 27, 2023.[4]

At the section 364 review hearing held on February 27, 2023, the juvenile court decided to terminate dependency jurisdiction with a juvenile custody order awarding

_____

[3]  "Section 364 governs review hearings for dependent children who have not been removed from one or both parents." (*In re R.F.* (2021) 71 Cal.App.5th 459, 469.)  "At a section 364 review hearing, '[t]he court shall terminate its jurisdiction unless the social worker or his or her department establishes by a preponderance of evidence that the conditions still exist which would justify initial assumption of jurisdiction under Section 300, or that those conditions are likely to exist if supervision is withdrawn.' [Citation.]" (*In re D.N.* (2020) 56 Cal.App.5th 741, 755, fn. 10.)

[4]  "We use the term 'permanent' to distinguish a restraining order issued after notice and hearing from a [temporary restraining order] issued ex parte. [Citations.]  Such an order is not permanent in the sense that it remains in force indefinitely, as permanent orders cannot exceed three years in length." (*In re A.P.* (2024) 103 Cal.App.5th 1137, 1141, fn. 2 (*A.P.*).)

the parents joint legal custody of the children, granting mother sole physical custody, and allowing father monitored visitation. The court stayed termination of dependency jurisdiction pending receipt on March 24, 2023 of a proposed juvenile custody order reflecting the court's rulings on custody and visitation. The court noted that the permanent restraining order hearing scheduled for March 17, 2023 remained on calendar, and remarked, "We'll come back for the restraining order hearing, but, otherwise, the case is—will be closed a week after once we receive the proposed family law orders."

At the March 17, 2023 permanent restraining order hearing, father requested unmonitored visitation, which request the juvenile court denied. (See Discussion, part B, *post*.) The court granted mother's request for a permanent restraining order on the ground that "father's conduct has put [mother's] safety . . . and the children's physical and emotional safety at risk of harm." The permanent restraining order expires on March 17, 2026, and the order protects mother and the three children from father, requires father to stay 100 yards away from the children's school, but allows father to have telephone calls with the children at certain designated times and monitored visitation with them.

On March 24, 2023, the juvenile court terminated dependency jurisdiction and issued a juvenile custody order conferring upon mother and father joint legal custody of the children, awarding mother sole physical custody, and granting father monitored visitation.

Father timely appealed from the permanent restraining order and the juvenile custody order.

6

## APPLICABLE LAW AND STANDARDS OF REVIEW

"Section 213.5, subdivision (a) permits a juvenile court to issue an order 'enjoining any person from . . . attacking, striking, . . . threatening, . . . harassing, . . . coming within a specified distance of, or disturbing the peace of the child [or any parent] . . . .' 'Issuance of a restraining order under section 213.5 does not require "evidence that the restrained person has previously molested, attacked, struck, sexually assaulted, stalked, or battered the child." [Citation.] Nor does it require evidence of a reasonable apprehension of future abuse. [Citation.]' [Citation.]" (*In re N.L.* (2015) 236 Cal.App.4th 1460, 1466.) A restraining order under the statute may be issued if " ' "failure to make [the order] may jeopardize the safety of the [protected persons]." ' [Citation.]" (See *In re S.G.* (2021) 71 Cal.App.5th 654, 673 (*S.G.*), second bracketed insertion added.) For instance, a parent's perpetration of acts of domestic violence against the other parent in the presence of a child may constitute "sufficient evidence to support the issuance of a restraining order protecting [the child]." (See *In re B.S.* (2009) 172 Cal.App.4th 183, 193–195.) Additionally, "[m]onitored visitation of a child is not incompatible with a restraining order" protecting the child from the parent. (See *N.L.*, at p. 1466.)

"When 'the juvenile court terminates its jurisdiction over a minor who has been adjudged a dependent child . . . the juvenile court on its own motion, may issue . . . an order determining the custody of, or visitation with, the child.' (§ 362.4, subd. (a).) 'When making a custody determination in any dependency case, the court's focus and primary consideration must always be the best interests of the child.' [Citations.]" (*In re N.M.* (2023) 88 Cal.App.5th 1090, 1094 (*N.M.*).)

7

" '[A]ppellate courts apply the substantial evidence standard to determine whether sufficient facts supported the factual findings in support of a [section 213.5] restraining order and the abuse of discretion standard to determine whether the court properly issued the order.' [Citation.]" (*S.G.*, *supra*, 71 Cal.App.5th at p. 670.) "We review a custody (or 'exit') order pursuant to section 362.4 for abuse of discretion . . . ." (*N.M.*, *supra*, 88 Cal.App.5th at p. 1094.)

" ' " '[S]ubstantial evidence . . . is . . . evidence which is reasonable, credible, and of solid value to support the conclusion of the trier of fact. [Citation.] In making this determination, all conflicts [in the evidence and in reasonable inferences from the evidence] are to be resolved in favor of the prevailing party, and issues of fact and credibility are questions for the trier of fact. [Citation.]' " . . . .' [Citation.] . . . . [Citation.]" (*In re Cole Y.* (2015) 233 Cal.App.4th 1444, 1451–1452 (*Cole Y.*).) The ruling "should 'be upheld if . . . supported by substantial evidence, even though substantial evidence to the contrary also exists and the [juvenile] court might have reached a different result had it believed other evidence.' [Citations.]" (See *In re Caden C.* (2021) 11 Cal.5th 614, 640.) Put differently, " '[w]e must accept the evidence most favorable to the order as true and discard the unfavorable evidence as not having sufficient verity to be accepted by the trier of fact. [Citation.]' [Citation.]" (See *Cole Y.*, at p. 1452.)

" 'Review for abuse of discretion is . . . focused not primarily on the evidence but the application of a legal standard.' " (*A.P.*, *supra*, 103 Cal.App.5th at p. 1143.) " ' " 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. . . . . [Citation.]' " ' [Citation.]" (*N.M.*, *supra*,

88 Cal.App.5th at p. 1094.)  Whether " ' "a discretionary order [is] based on an application of improper criteria or incorrect legal assumptions[,]" ' " however, " ' "is a question of law [citation] requiring de novo review [citation]." ' [Citation.]"  (See *S.G.*, *supra*, 71 Cal.App.5th at p. 673.)

"The juvenile court's orders are 'presumed to be correct, and it is appellant's burden to affirmatively show error.' [Citations.]"  (*In re J.F.* (2019) 39 Cal.App.5th 70, 79 (*J.F.*).)  To discharge this "burden of establishing reversible error," the appellant " ' "must provide argument and legal authority for the positions taken." . . . .' [Citation.]"  (See *id.* at pp. 79–80.)

## DISCUSSION

### A.    Father Fails To Demonstrate the Juvenile Court Erred In Including the Children in the Restraining Order

Father does not claim the juvenile court erred in issuing a permanent restraining order protecting mother from him.  Instead, father argues the court erred in "includ[ing] the children in the restraining order" because "[t]here was no substantial evidence presented that [he] was in any way aggressive or inappropriate toward his children at any point in time, before or after the filing of the petition."  In particular, father asserts, "The children . . . all denied knowledge of any history of domestic violence between mother and [father]" and the children "stated they did not observe [father] behave in a strange or concerning manner"; father had no criminal history; Albert, a maternal

9

uncle,[5] denied knowledge of any domestic violence between the parents or having witnessed father become violent while using alcohol; and the children and "all of the visitation monitors said the visits went well, [father] engaged with all of the children and there were no reports of negative incidents during the visitation." Father also cites excerpts from the detention report to support his assertions mother had denied that the children (a) "were present during any marital incidents"[6] and (b) "observed [father] under the influence" of drugs. Additionally, although father acknowledges mother accused him of "grabb[ing] her arm" on February 19, 2023, he claims to have (a) "denied that there was any domestic violence" and (b) maintained that mother "was the aggressor and [had] insulted him."

---

[5] DCFS asserts that Albert's true name is "Alberto" and that he is erroneously identified as "Albert" in certain parts of the record. This ambiguity has no impact on our resolution of this appeal.

[6] We note father's characterization of this portion of the detention report is misleading. The excerpt father cites is a quotation from a police report documenting the April 2021 incident discussed later in this section in which father allegedly covered mother's face with a pillow. The quotation from the police report provides in pertinent part: "[Mother] said there have been approximately ten unreported domestic violence incidents during their entire relationship. [¶] [Mother] stated [she] and [father] have been married for approximately ten years and have children in common. [Mother] said the children were not present during *these* incidents." (Italics added.) This passage indicates mother may have told the police that her children did not witness 10 unreported pre-April 2021 incidents of domestic violence.

10

In leveling this evidentiary challenge to the inclusion of the children in the permanent restraining order, father overlooks the deferential substantial evidence standard governing his claim of error. Under this standard, " ' " 'we review the record in the light most favorable to the court's determinations' " ' " (*In re S.R.* (2020) 48 Cal.App.5th 204, 219), and we "discard the unfavorable evidence as not having sufficient verity to be accepted by the trier of fact' " (*Cole Y., supra,* 233 Cal.App.4th at p. 1452). As we explain below, the juvenile court could have reasonably inferred from other evidence that father jeopardized his children's physical safety by exposing them to risk that he would commit acts of domestic violence against mother in their presence.[7]

As we noted earlier, father pleaded no contest to—and the juvenile court sustained—an amended dependency petition, which alleged that he and mother "have a history of engaging in violent altercations," including an occasion in April 2021 when "father chased . . . mother with a rake[ ] in the presence of the children Rocio and Santiago" and another incident in 2021 when "father slapped . . . mother's face"; "[f]ather has a history of substance abuse, including alcohol, and is a recent user of amphetamine [and] methamphetamine"; and "[s]uch violent conduct on the part of . . . mother and . . . father, substance use

_____

[7] In light of our conclusion, we do not decide whether the juvenile court's finding that father put the children's "emotional safety at risk of harm" further supports including them as protected parties in the restraining order. (See *Estate of Sapp* (2019) 36 Cal.App.5th 86, 104 [" 'If the *decision* of a lower court is correct on any theory of law applicable to the case, the judgment or order will be affirmed regardless of the correctness of the grounds upon which the lower court reached its conclusion.' "].)

by . . . father, and . . . mother's failure to protect the children . . . place the children at risk of serious physical harm . . . ." (Procedural Background, *ante*.)

A declaration mother filed in another matter in May 2021 to support a prior request for a restraining order against father contains additional evidence regarding father's acts of domestic violence and his substance abuse.[8] In particular, mother attested that in April 2021, father "grabbed a pillow and put it over [her] face" while Santiago was sleeping in the bed next to her, and that father removed the pillow from mother's face and allowed her to leave the room after Santiago awoke. Mother further attested that in April 2021, father "went towards [one of the children's maternal uncles] to physically assault him" after the maternal uncle confronted father for playing loud music, but another maternal uncle succeeded in "h[olding father] back." Mother also testified that father was drunk when he chased her with the rake, and that Rocio and Santiago were witnesses to that incident. Similarly, mother declared that on one occasion in 2013, father physically assaulted her while he "was heavily drunk . . . ."

Indeed, DCFS noted in the jurisdiction/disposition report mother had told the agency that "father drank alcohol daily," "father would become agitated, rude and verbally confrontational with . . . mother whenever he consumed excessive amounts of alcohol," and "the arguing between the parents had been

---

[8] In June 2021, the trial court granted mother a six-month restraining order in that case. Mother's request for the prior restraining order (including her supporting declaration) and the prior restraining order itself were attached to an addendum report DCFS filed on July 8, 2022.

escalating for some time due to . . . father's consumption of alcohol." Likewise, in the jurisdiction/disposition report, DCFS noted Albert (one of the children's maternal uncles) stated "the arguments between the parents seemed to occur when . . . father drank alcohol," and "father could become easily agitated, . . . got angry quickly and . . . could sometimes verbally insult . . . mother in a loud voice."

Furthermore, there is evidence that father continued to present a risk of physical harm to his children after the juvenile court sustained the amended dependency petition.

At the combined jurisdiction/disposition hearing held on August 26, 2022, the juvenile court ordered father to participate in a full drug and alcohol program, complete a 12-step program, submit to random and on-demand drug and alcohol testing, and complete a 26-week domestic violence program. Yet, in its section 364 status review report filed on February 8, 2023, DCFS informed the court that father had not provided the agency with proof he had enrolled in a full drug and alcohol program or a 12-step program, father had completed only three out of 26 weekly domestic violence classes because he missed several sessions, and father missed 10 drug/alcohol tests from August 30, 2022 to January 11, 2023 and tested positive for Ethanol on seven occasions during that period. The report also indicated that father admitted testing positive for Ethanol because he had consumed alcohol.

In addition, mother attested in her declaration supporting her request for the instant permanent restraining order that father harassed mother on multiple occasions between September 2022 and February 2023.

Mother stated in her declaration that father "entered [her] home without [her] permission" in September 2022, and that she "had to call the police" and "changed the locks to [her] home." Mother also stated that in October 2022, father followed mother in his vehicle when she drove the children to school. She claimed that on one occasion when father picked up the children in November 2022, he "verbally attacked" and "shout[ed] insults" at mother. Mother further declared, "On February 14, 2023, [father] called me and told me that he knew my whereabouts all the time because he had 'eyes all over the city.'" According to mother, on February 19, 2023, "[father] grabbed the house key out of [her] hand" and stole the key; mother claimed to have sustained a bruise on her hand as a result of this incident. Similarly, a last minute information report filed by the agency on February 27, 2023 shows mother told DCFS that on February 19, 2023, father had grabbed her arm and told her that when the case was closed, he was returning to the home "whether she liked it or not."

Mother also claimed in her declaration that father threatened her after the juvenile court had sustained the amended petition. Specifically, mother stated that in December 2022, father telephoned her, and stated that "if [she] was ever with another man, he would shoot [her] and who[m]ever [she] was with," and that "he did not care if he went to jail." Mother further attested, "On February 2, 2023, [father] stated that if he ever found out that I was with another person, I would be sorry."

Based on the evidence detailed above, the juvenile court could have reasonably found that father repeatedly engaged in aggressive acts in mother's and the children's presence both

14

before and after the court had asserted dependency jurisdiction, and that father's ongoing substance abuse contributed to his behavior.  Because there is substantial evidence that the children's safety would have been jeopardized in the absence of a restraining order protecting them from father, the juvenile court did not err in naming them as protected parties in the order.

Lastly, father asserts in a heading to his opening brief that "the juvenile court erred by including the children in the restraining order *while simultaneously ordering joint legal custody to both parents*."  (Italics added; capitalization & boldface omitted.)  He also seems to argue that the permanent restraining order "limit[s] his ability to exercise his educational rights over his children" because the order "prevent[s father] from being within 100 yards of the children's school . . . ."[9]  (Fn. omitted.)  Father does not develop this argument further or cite authority to support it.  Accordingly, father waives this claim of error.  (See *J.F.*, *supra*, 39 Cal.App.5th at p. 79 [" ' "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." ' "].)

## B. We Reject Father's Assertion the Juvenile Court Concluded It Lacked Authority To Address His Request for Unmonitored Visitation

Father asserts that at the March 17, 2023 permanent restraining order hearing, "the juvenile court erroneously held

_____

[9] We observe that the permanent restraining order does not bar father from exercising his right to make educational decisions for the children by contacting their school via mail, telephone, or electronic means.

15

that it did not have authority to address [his] request for unmonitored visitation" "because it was not before the court . . . ." He argues, "This was legally incorrect as the court always has authority to consider visitation when terminating dependency jurisdiction and issuing juvenile custody orders."

The reporter's transcript of the March 17, 2023 hearing belies father's claim the juvenile court concluded that it lacked authority to consider his request for unmonitored visitation. At that hearing, father's counsel orally requested that the court "restore [father] to unmonitored" visits with the children. Mother's counsel countered that father's request for unmonitored visits was not "proper . . . at th[at] time" because "[t]he court previously stayed receipt of the custody order until [March] 24th in order to hear the restraining order request, and the case closed for monitored visitation for father."

In rejecting father's request for unmonitored visitation, the juvenile court remarked:

> [Father's counsel], the minute order from February 27 indicates that the juvenile custody order is to reflect mother to be awarded sole physical custody of all the children . . . .  Parents were to be awarded joint legal custody . . . . Father is to be awarded monitored visitation.  Mother is not to monitor nor be present at father's visits.
>
> There's no indication that the issue of father's visits would be heard today.  At that time[, the] court found a basis for reverting father's visits to

16

monitored, and I will not disturb that order at this time.[10]

The transcript thus reveals the juvenile court agreed with mother's counsel that father's oral entreaty for unmonitored visits with his children was procedurally improper because the court had previously decided to issue exit orders awarding him only monitored visitation. The court merely found that it had already adjudicated the proper scope of father's visitation rights, and not that it was powerless to revisit that prior determination. Indeed, by observing that "the juvenile court *declined* to hear [his] request" for unmonitored visitation at the restraining order hearing (italics added), father seems to acknowledge the court simply elected not to reconsider whether father would be awarded unmonitored visitation in the exit order.

Father does not argue—let alone cite authority demonstrating—that the juvenile court erred in declining to exercise its discretion to reconsider its prior decision to close the dependency case with an order granting father only monitored visits. (See *Nickolas F. v. Superior Court* (2006) 144 Cal.App.4th 92, 111, 116 (*Nickolas F.*) [holding that a juvenile court has the discretion to "reconsider the substance of a previous order"].) Instead, father argues, in passing, "[T]he juvenile court erred in ordering monitored visits . . . in light of the evidence that there

---

**10** Whereas Commissioner Murillo conducted the March 17, 2023 permanent restraining order hearing, Judge Vera presided over the section 364 review hearing held on February 27, 2023. As the quotation in the text indicates, Commissioner Murillo did not claim she lacked authority to review Judge Vera's prior rulings from the section 364 hearing.

17

were no concerns or inappropriate behavior during [father's] visitation with his children."

Insofar as father challenges the juvenile court's decision not to reconsider its prior ruling restricting him to monitored visitation, we reject that claim of error. As we explained in Discussion, part A, *ante*, the record contains substantial evidence that at the conclusion of the dependency proceedings, there was still a risk that father would perpetrate future acts of domestic violence against mother in the children's presence. Accordingly, the court did not abuse its discretion in declining to reconsider its decision to grant father only monitored visitation. (See *Nickolas F.*, *supra*, 144 Cal.App.4th at pp. 118–119 [indicating that in reviewing a juvenile court's ruling for abuse of discretion, the court's factual findings will be affirmed if they are supported by substantial evidence]; *N.M.*, *supra*, 88 Cal.App.5th at p. 1094 [holding that the juvenile court's " 'primary consideration' " in fashioning an exit order " 'must always be the best interests of the child' "].)

## DISPOSITION

We affirm the juvenile court's March 17, 2023 restraining order and the juvenile custody order issued on March 24, 2023.
<u>NOT TO BE PUBLISHED.</u>


BENDIX, J.


We concur:



ROTHSCHILD, P. J.



KLINE, J.*

---

    **\*** Retired Presiding Justice of the California Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.